## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Equinor Energy L.P. f/k/a and a/k/a | ) | |
| Brigham Oil & Gas L.P. and Statoil | ) | **ORDER GRANTING DEFENDANTS'** |
| Oil & Gas L.P., | ) | **MOTION TO DISMISS** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:21-cv-082 |
| | ) | |
| Sunny Acres, LLC and Larry Novak, | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court is the Defendant's motion to dismiss filed on February 24, 2023.  See Doc. No. 36.  The Plaintiffs filed a response in opposition to the motion on March 31, 2023.  See Doc. No. 45.  The Defendants filed a reply brief on May 1, 2023.  See Doc. No. 49.  For the reasons below, the motion is granted.

## I.    BACKGROUND

Equinor Energy LP ("Equinor") is a Delaware Limited Partnership with its principal place of business in Austin, Texas.  Equinor was formerly known as Brigham Oil & Gas L.P ("Brigham").  Based on the citizenship of its members, Equinor is a citizen of Delaware, Nevada, and Texas.

Sunny Acres LLC ("Sunny Acres") is a North Dakota limited liability company with its principal place of business in Alexander, North Dakota.  Larry Novak is a citizen and resident of North Dakota and the president and sole member of Sunny Acres.

On September 8, 2011, Brigham sent a well proposal/election letter to Sunny Acres inviting Sunny Acres to make an election as to whether it wished to participate or not participate in the

1

Greenstein 30-31 #1H well.  See Doc. No. 1-1.  The letter indicated the well was already producing. On March 3, 2012, Novak, on behalf of Sunny Acres agreed to participate in the drilling and completion of the Greenstein 30-31 #1H well in McKenzie County, North Dakota.  Sunny Acres was the owner of oil and gas leases and a working interest in the area underlying the Greenstein 30-31 #1H well.  The well was subject to certain pooling orders issued by the North Dakota Industrial Commission.  Brigham/Equinor was to be the driller and operator of the Greenstein 30-31 #1H well. The Greenstein 30-31 #1H well became a producing well, although costs to complete the well were more than double the initial estimate of $7,800,00.  By agreeing to participate in the well, Sunny Acres agreed to pay a reasonable and proportionate share of the drilling costs which were expected to be $84,077.84.  Equinor contends Sunny Acres failed to pay its proportionate share of the costs. Sunny Acres maintains the proportionate share of the drilling costs billed by Equinor to Sunny Acres ($202,245.80) is unreasonable.  On April 4, 2021, Equinor brought this diversity action against Sunny Acres and Novak for breach of contract and sought damages in the amount of $224,646.35. The Defendants have filed a motion to dismiss for failure to exhaust administrative remedies which Equinor opposes.

II.     **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction.  "Subject matter jurisdiction defines the court's authority to hear a given type of case."  Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009).  Jurisdictional issues are a matter for the Court to resolve prior to trial.  Osborn v. United States, 918 F.2d 724, 729 (8th Cir. 1990).

"A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack'

and a 'factual attack'" on jurisdiction.  Osborn, 918 F.2d at 729 n.6.  In a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)."  Id. (internal citations omitted).  "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards."  Id. (internal citation omitted).  If a defendant wishes to make a factual attack on "the jurisdictional allegations of the complaint, the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute.  Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993).

In this case, the Court will treat the motion as a facial attack and afford the Plaintiff, the non-moving party, all the protections afforded by Rule 12(b)(6).  The Court will consider only the complaint and the exhibits attached to the complaint.  See Carlsen v. GameStop, Inc., 833 F.3d 903, 908 (8th Cir. 2016) (discussing a facial attack).

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates the dismissal of a claim if there has been a failure to state a claim upon which relief can be granted.  In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A plaintiff must show that success on the merits is more than a "sheer possibility."  Id.  A complaint is sufficient if its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  The court must accept all factual allegations as true, except for legal conclusions or "formulaic recitation of the elements of a cause of action."  Id. at 681.  Detailed factual allegations are not necessary under the Rule 8 pleading

standard, rather a plaintiff must set forth grounds of its entitlement to relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders a naked assertion devoid of further factual enhancement." Ashcroft, 556 U.S. at 678 (2009). The determination of whether a complaint states a claim upon which relief can be granted is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Dismissal will not be granted unless it appears beyond doubt the plaintiff can prove no set of facts entitling plaintiff to relief. Ulrich v. Pop Cnty, 715 F.3d 1054, 1058 (8th Cir. 2013).

III.   **LEGAL DISCUSSION**

The Defendants contend the Plaintiff failed to exhaust its administrative remedies before the North Dakota Industrial Commission. It is undisputed the Defendants agreed to participate in the drilling and completion of the Greenstein 30-31 #1H well. It is also undisputed the Plaintiff did not seek any sort of redress before the Industrial Commission relative the current dispute over whether the drilling costs are reasonable.

The doctrine of administrative exhaustion mandates that "a plaintiff must administratively exhaust her remedies before filing suit in federal court." King v. United States, 3 F.4th 996, 999 (8th Cir. 2021) (discussing cases). The failure to exhaust administrative remedies makes an action subject to Rule 12(b)(1) dismissal for lack of subject-matter jurisdiction. See id. It is well-established that "[w]here relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed." Reiter v. Cooper, 507 U.S. 258, 269 (1993);

see Harris v. P.A.M. Transport, Inc., 339 F.3d 635, 638 (8th Cir. 2003) (noting failure to exhaust

administrative remedies requires dismissal).

> The exhaustion requirement serves four primary purposes.  First, it carries out the congressional purpose in granting authority to the agency by discouraging the frequent and deliberate flouting of administrative processes [that] could ... encourag[e] people to ignore its procedures.  Second, it protects agency autonomy by allowing the agency the opportunity in the first instance to apply its expertise, exercise whatever discretion it may have been granted, and correct its own errors.  Third, it aids judicial review by allowing the parties and the agency to develop the facts of the case in the administrative proceeding.  Fourth, it promotes judicial economy by avoiding needless repetition of administrative and judicial factfinding, and by perhaps avoiding the necessity of any judicial involvement at all, if the parties successfully vindicate their claims before the agency.  Without an exhaustion requirement, people would be encouraged to ignore the administrative dispute resolution structure, destroying its utility.

Peters v. Union Pacific R.R. Co., 80 F.3d 257, 263 n. 3 (8th Cir. 1996) (internal quotations and

citations omitted).  "As a general rule, judicial interference should be withheld until the

administrative process has run its course." Burlington Northern, Inc. v. Chicago and North Western

Transp. Co., 649 F.2d 556, 558-59 (8th Cir. 1981).  The Eighth Circuit regularly applies the

exhaustion doctrine in cases where a litigant has failed to fully adhere to the administrative appeals

process provided by agency regulations.  See Klaudt v. United States Dep't of Interior, 990 F.2d

409, 411-12 (8th Cir. 1993).

The North Dakota Supreme Court has advised that "[d]ismissal for lack of subject matter

jurisdiction is generally appropriate if the plaintiff fails to exhaust administrative remedies, because

failure to exhaust those remedies precludes making a claim in court." Cont'l Res., Inc. v. Counce

Energy BC #1, LLC, 905 N.W.2d 768, 771 (N.D. 2018).  The exhaustion doctrine  applies to claims

subject to the Industrial Commission's review in the first instance.  Id. at 772 ("Because the parties

have failed to exhaust their administrative remedies before the Commission, we conclude the district

court lacked subject matter jurisdiction over this lawsuit."); Wisdahl v. XTO Energy Inc., No.

4:13-CV-136, 2014 WL 10537960, at *15 (D.N.D. May 14, 2014) (proposed class action concerning flaring natural gas lacked subject-matter jurisdiction where plaintiffs failed to exhaust administrative remedies before the Industrial Commission).

In this case, the Court agrees with the Defendants that the Industrial Commission has jurisdiction over this dispute over drilling costs. Section 38-08-08(2) of the North Dakota Century Code provides as follows:

> 2. Each such pooling order must make provision for the drilling and operation of a well on the spacing unit, and for the payment of the reasonable actual cost thereof by the owners of interests in the spacing unit, plus a reasonable charge for supervision. In the event of any dispute as to such costs, the commission shall determine the proper costs. If one or more of the owners shall drill and operate, or pay the expenses of drilling and operating the well for the benefit of others, then, the owner or owners so drilling or operating shall, upon complying with the terms of section 38-08-10, have a lien on the share of production from the spacing unit accruing to the interest of each of the other owners for the payment of the owner's or owners' proportionate share of such expenses. All the oil and gas subject to the lien must be marketed and sold and the proceeds applied in payment of the expenses secured by such lien as provided for in section 38-08-10.

N.D.C.C. § 38-08-08(2) (emphasis added).

In 2018, the North Dakota Supreme Court applied Section 38-08-8-(2) to a dispute very similar to the instant case and found the state district court lacked jurisdiction. Counce Energy, 905 N.W.2d at 772. In *Counce Energy*, the operator (Continental Resources) filed a production lien pursuant to N.D.C.C. § 38-08-10 against a non-operating working interest owner's (Counce Energy) proportionate share of production for failure to pay its share of drilling costs. Id. at 770. Counce Energy, which had elected to participate in the well, had refused to continue paying for drilling costs once the costs exceeded the estimated authority for expenditure ("AFE"). Id. Continental Resources sued to foreclose the lien but then abandoned the lien foreclosure action and instead filed an action for breach of contract. Counce Energy filed a counterclaim contending the drilling expenses were

unreasonable.  The district court dismissed the counterclaim for lack of jurisdiction and Continental Resources prevailed at trial on its breach of contract claim.  On appeal, the North Dakota Supreme Court, applying Section 38-08-08, held only the Industrial Commission is "authorized to determine the 'reasonable actual cost' of drilling and operating the well."  Id. at 772.  The North Dakota Supreme Court explained that statutory scheme set forth in Section 38-08-08(2) "does not authorize a court action for breach of contract to collect what the operator believes a non-operating working interest owner owes for the 'reasonable actual cost' of drilling and operating the well."  Id.  Because the parties had not exhausted their administrative remedies before the Industrial Commission, the district court lacked  subject matter jurisdiction over the dispute and the jury verdict was vacated. Id.

Counce Energy is directly on point and clearly controls the outcome of this case.  The plain language of Section 38-08-08(2) requires any dispute over drilling costs to be resolved by the Industrial Commission.  The dispute in this case over the reasonableness of drilling expenses falls within the Industrial Commission's exclusive jurisdiction and Equinor has failed to exhaust its administrative remedies.  Given this failure, the Court concludes it lacks subject matter jurisdiction. Having determined it lacks jurisdiction, the Court need not address the other issues raised in the motion to dismiss.


IV.   **CONCLUSION**

Accordingly, and for the reasons set forth above, the Defendant's motion to dismiss (Doc. No. 36) is **GRANTED**.  The case is dismissed without prejudice for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

Dated this 13th day of June, 2023.

/s/ *Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court